## ANDREWS, (TIERNAN v.)

[See Tiernan v. Andrews. Cases Nos. 14,025 and 14,026.]

---

## Case No. 381.

### ANDREWS v. UNITED STATES.

[2 Story, 202.][1]

Circuit Court, D. Massachusetts. May Term, 1842.

OFFICE AND OFFICERS — COMPENSATION—CHANGE IN DUTIES—EXPENSES — PENAL STATUTES—CONSTRUCTION.

1. Every public officer is required to perform all duties, which are strictly official, although they may be required by laws passed after he comes into office, and may be cumulative upon his original duties, and although his compensation therefor be wholly inadequate. In such a case, he must look to the bounty of congress for any additional reward.

2. Where the collector of Ipswich claimed a commission on drafts drawn by him on the collector at Boston, in payment of bounties due to fishermen, under the act of [July 29] 1813, c. 34, [4 Bioren & D. Laws, 582; 2 Story's Laws, 1350; 3 Stat. 49, c. 35,] it was held, that there being no provision, by which a commission is allowed thereon, the collector could not charge a commission.

3. The collector of any port, being authorized by the act of [March 3] 1817, c. 282, § 7, [3 Story's Laws, 1650; 3 Stat. 397, c. 109,] to appoint a deputy, with the approbation of the secretary of the treasury; it seems, that a deputy, so appointed, should receive a reasonable compensation for his services, although no compensation therefor be fixed.

4. All expenditures, made by a collector for office rent, clerk-hire, fuel, and stationery, are to be deemed incidents to his office, and should be allowed as proper charges against the United States; and if he do not keep and transmit yearly accounts thereof, according to the requisitions of the act of [March 2] 1799, c. 129, § 2, [3 Bioren & D. Laws, 237; 1 Story's Laws, 665; 1 Stat. 704, c. 23,] he does not forfeit his right to be reimbursed for such expenditures, but only subjects himself to the payment of the penalty.

[Cited in U. S. v. Flanders, 112 U. S. 88, 5 Sup. Ct. 69.]

5. Penal statutes must be strictly construed, and are never extended by implication.

[Cited in Wilson v. Singer Manuf'g Co., Case No. 17,836.]

At law. Writ of error from the judgment of the district court, of Massachusetts district. The original suit was debt brought upon the official bond of Andrews, formerly collector of the port and district of Ipswich. The United States claimed a balance due for

moneys received by the defendant; and the pleadings put the question, whether any such balance was due, directly to the jury. There was, also, a claim of set-off, by the defendant, for legal and equitable claims, asserted to be due to him; all of which were rejected at the trial, by the ruling of the district judge, to whose decisions on the points raised, a bill of exceptions was taken. The jury found a verdict for the United States for the sum of $1,142.27; upon which a writ of error was brought by the defendant. [Reversed.]

The bill of exceptions, after reciting the pleadings and issue, proceeded as follows—Which issue being joined as aforesaid, came on to be tried by a jury, duly empanelled and sworn for that purpose. The plaintiffs offered, and gave in evidence, a duly authenticated copy of the bond declared on. The plaintiffs, also, offered and gave in evidence a duly authenticated treasury transcript of the accounts of the said Asa Andrews, by which it appeared, that on the twenty-ninth day of July, in the year of our Lord one thousand eight hundred and twenty-nine, there was in the hands of the said Asa Andrews, to the credit of the United States, the sum of nine hundred and twenty-one dollars and ninety-two cents. The plaintiffs here rested their case.

The defendants then proved, that the said Asa Andrews had, from time to time, during his continuance in the office of collector, as aforesaid, investigated claims for bounties to fishermen under the several laws of the United States, and had paid and disbursed to the said fishermen, in all, the sum of fifty-four thousand seven hundred and ten dollars and eighty-six cents, by drafts upon the collector at Boston, for which service he had received from the United States no compensation beyond the salary of his office, and that his claim for such compensation had been rejected by the treasury department, which rejection was proved. And the defendants prayed his honor, the judge, to instruct the jury, that the said Andrews was entitled to a reasonable compensation for this service, which was proved to be the most laborious duty of the said office. But his honor, the judge, refused so to instruct the jury, but instructed them, that the said Andrews was not by law entitled to any commission or compensation on the amount received by drafts on the collector at Boston, and applied to the payment of such bounty to fishermen, nor to any compensation for such service, beyond the salary of his office, and the commission on such portion of the amount of bounties paid, as was made from his own collection of duties in his district. The defendants then offered, and gave in evidence, the several commissions of the said Asa Andrews, as inspector of the revenue of the port of Ipswich; and proved, that the said Andrews performed the duties of the said office during the whole time that he held

the office of collector as aforesaid. The defendants further proved the importation of large quantities of distilled spirits into the port of Ipswich, and that he performed all the duties pertaining to the said office of inspector, in reference to said distilled spirits, and prayed his honor, the judge, to instruct the jury, that he was entitled to compensation for his services, so performed, as inspector, in reference to distilled spirits, and to submit to the jury the question, whether he has been paid therefor or not; but his honor refused so to instruct the jury, but did instruct them, that the said Andrews was not entitled, in point of law, to any compensation for his said services, as inspector, beyond his salary as collector, and the fees, if any, allowed by law for such services. The defendants then proved, that the said Asa Andrews had, during the whole time of his continuance in office, employed a deputy-collector, duly appointed and commissioned as such deputy, by him, the said Asa Andrews, which deputy acted in his absence. and sometimes, when he was not absent; and as to deputies offered evidence, tending to show, that he had paid the said deputies, and that he had received no compensation or allowance for the said sums, so paid to the said deputies, and that his claim for such compensation or allowance had been rejected by the treasury department. The defendants further offered, and gave evidence, that the port of Ipswich embraced a long line of sea-coast, and of a character well calculated to afford facilities for defrauding the revenue; and proved by the testimony of several persons, who had been connected with the collection of the customs in the vicinity of the port of Ipswich, and by the late collector of said port of Ipswich, Timothy Souther, Esq., that it is, and has been necessary to the protection of the revenue, that there should be, at least, one subordinate officer in said port of Ipswich. The defendants also proved, that except at times when vessels from foreign ports were in, and were actually discharging, no compensation had been allowed for any subordinate officer. They further proved, that the said deputy-collector had performed the duties of a tide-waiter, or inspector, and that he was the only subordinate officer employed, except while foreign cargoes were discharging.

The defendants requested his honor, the judge, to instruct the jury, that the said Asa Andrews was entitled to be allowed such sums of money as he had paid to the said deputies; but his honor refused so to instruct the jury, but instructed them, that, in regard to any such deputies, they were entitled only to such fees, as by law were appointed for their services; and that the collector, having not made any charge for such services contemporaneously, nor at any time, in his quarterly accounts, rendered during his continuance in office, a demand for any discretionary allowance, which the officers of the treasury might make in the premises, could

not in this suit be sustained. The defendants then proved, that the said Asa Andrews had performed the duties of the office of surveyor of the said port of Ispwich, and that he had received no compensation therefor, and that his claim for such compensation had been rejected by the treasury department; and the said defendants requested his honor, the judge, to instruct the jury, that the said Andrews was entitled to compensation for his said services as surveyor of said port; but his honor refused so to instruct the jury, and did instruct them, that the said Andrews was not entitled to any compensation for such services, further than his salary as collector, as aforesaid, and the legal fees for any duties at any time performed as surveyor, and that it was now too late to receive and sustain the defendant's demands for such services, which were not contemporaneously made, or introduced in any of his quarterly accounts, during his continuance in the office of collector.

It appears, that the defendants made certain charges of payments, from time to time, and at different periods, to weighers, gaugers, inspectors, &c.; but the defendants proved, that payments to such persons were made only at such times as vessels were in and actually discharging. The defendants then proved, that the expenditures of the said Asa Andrews for office rent, fuel, stationery, and clerk hire, during the time in which he held the office of collector, as aforesaid, amounted to the sum of fifteen hundred and fifty-five dollars and seventy cents; and that he had presented a yearly account of the said expenditures to the treasury department, and that no part of the same had ever been allowed to him, but that the said claim and every part of it had been disallowed by the said treasury department. The defendants prayed his honor to instruct the jury, that the said Andrews was entitled to compensation for the said expenditures of office rent, fuel, clerk hire, and stationery; but his honor refused so to instruct the jury, but instructed them that the said Andrews was not by law entitled to any allowance for the said expenditures. The defendants here rested their case, and thereupon the jury returned their verdict for the United States, for the sum of $1142.27.

The cause was now submitted to the court without argument by R. Choate, for the plaintiff in error, and by Dexter, Dist. Atty., for the United States.

[Before STORY, Circuit Justice, and SPRAGUE, District Judge.]

STORY, Circuit Justice. This cause having been submitted to the court without argument, I am not sure, that I fully comprehend all the grounds intended to be relied upon by counsel, either in objection to, or in support of, the various claims stated in the bill of exceptions. If any of these claims, although not strictly of a legal nature, are yet ex aequo et bono due to the defendant for extra

services rendered, or moneys expended on account of, and for the benefit of the United States, it is very clear, that the defendant is entitled to an allowance and compensation therefor, upon the footing of a quantum meruit under the act of [March 3] 1797, c. 74, § 3, [2 Bioren & D. Laws, 594; 1 Story's Laws, 464; 1 Stat. 512, c. 20.] This was fully settled by the supreme court in U. S. v. Wilkins, 6 Wheat. [19 U. S.] 135, 143, 144, and has been repeatedly recognized in subsequent cases, and especially in the case of Gratiot v. U. S., 15 Pet. [40 U. S.] 336, 370, 371. But where duties are required to be performed by a collector or other public officer, strictly official, and falling within the ordinary range thereof, there, although they may be conferred by laws subsequently passed, after he came into office, or may be cumulative upon the original duties of the officer, he must be deemed to take and hold the office cum onere; and however inadequate the compensation may be for his labor and services, he must content himself with the salary and fees allowed by law, and look to the bounty of congress for any additional reward.

Tried by these tests, let us now proceed to consider the various claims of the defendant, stated in the bill of exceptions. The first is for the ascertainment and payment by drafts on the collector at Boston, of the bounties due to fishermen, under the act of [July 29] 1813, c. 34, [4 Bioren & D. Laws, 582; 2 Story's Laws, 1350; 3 Stat. 49, c. 35,] and other prior repealed acts, and subsequent acts still in force, on the same subject. I do not, from the manner in which the ruling of the district judge is stated in the exception, precisely understand whether the learned judge meant to say, that if these bounties had been paid by the defendant, out of moneys of the United States, from the collection of duties in his district, the commissions would have been allowable for this particular service; but that, having been made by drafts drawn by him upon the collector at Boston, they were not allowable on the accounts of those drafts; or whether the learned judge meant only to say, that, as by the act of [March 2] 1799, c. 129, § 2, [3 Bioren & D. Laws, 237; 1 Story's Laws, 665; 1 Stat. 704, c. 23,] for the compensation of officers of the customs, three per cent. commissions were allowed to the collector of customs of Ipswich, on all moneys received by him on account of duties on goods imported into his district, and as no other cases were provided for, therefore, no commissions were payable on account of the payment of bounties to fishermen. If the former was intended to be laid down by the learned judge as law, I should not be prepared to adopt it: for, in my judgment, a payment by the drafts of the defendant on the collector at Boston, would be just as much a payment to entitle the defendant to the three per cent. commissions,

in the sense of the law, as if he had paid the bounties out of any moneys in his own hands, under his official collections. The question, then, would be, whether the three per cent. is provided for by law in either case for the payment of bounties. I have not been able to find any provision for any compensation of this sort, in any act of congress; and if there be any, it has escaped my researches. If any exists, I desire to have it pointed out at the bar, before any final judgment is rendered in this case. But if the other be the true construction of the ruling of the learned judge, then, it seems to me perfectly correct; because, by the act of 1813, c. 34, § 5, as well as by the prior and subsequent acts upon the same subject, it is made a part of the ordinary official duties of the collector of the customs, to ascertain and pay these bounties; and then (as has been already suggested) he must rely upon the salary and fees annexed by law to the office, unless some additional compensation is allowed for this service, which, in a district like that of Ipswich, as will appear from the facts stated in the record, is one of no small labor and responsibility, compared with the other ordinary duties of the collectorship. In such a case, however, the appeal lies to the bounty of congress, and not to a judicial tribunal.

The next claim is for the compensation paid to a deputy collector, by the defendant. The act of 1799, c. 128, § 22, [3 Bioren & D. Laws, 457; 1 Story's Laws, 592; 1 Stat. c. 22,] authorized the collector, in cases of occasional and necessary absence, or of sickness, and not otherwise, to exercise and perform their functions by a deputy. The act of [March 3] 1817, c. 282, § 7, [3 Story's Laws, 650; 3 Stat. 397, c. 109.] authorized collectors, with the approbation of the secretary of the treasury, to employ such deputy collectors as they should deem necessary; and this provision was perpetuated by the act of [May 6] 1822, c. 56, § 4, [3 Stat. 681.] Another act, passed at the same session.— act of [May 7] 1822, c. 107, § 15, [3 Stat. 693,] —authorized the secretary of the treasury to limit and fix the compensation (among other officers of the customs) of each deputy collector, limiting it not to exceed, except for certain enumerated ports, one thousand dollars per annum, and for those ports, not to exceed fifteen hundred dollars, "for any services he may perform for the United States in any office or capacity." I am not aware of any other act, which expressly provides for a distinct compensation to be paid by the United States to such deputy collectors. Whether the secretary of the treasury has ever sanctioned any allowance to any deputy for the port and district of Ipswich, I do not know; and there is nothing in the record, which leads to any conclusion on the subject. But, if he has sanctioned the appointment of a deputy for that port and district, and the business required it, it would

seem reasonable, that some compensation should be paid by the United States for his services. Perhaps the case of such a deputy, if not otherwise compensated, may have been treated as embraced within the general provision in the act of 1799, c. 129, § 2, which authorizes the allowance of two dollars a day to every other person, than a regular inspector, whom the collector may find it necessary and expedient to employ as occasional inspector, or in any other way, in aid of the revenue. In the act of 7th of July, 1838, c. 169, § 3, [5 Stat. 264,] a limitation is put upon the allowance of compensation to deputy collectors; and the like provision occurs in the subsequent act of the 3d of March, 1841, c. 16, [35,] § 2, [5 Stat. 431.] However, as no evidence is contained in the record upon this particular point, it is impracticable for this court, upon a writ of error, to look beyond the mere ruling of the court below, upon the point of law; and the burthen of proof, to establish an error in the ruling, is upon the plaintiff in error.

In the next place, as to the allowance, claimed by the defendant for performing the duties of surveyor; it appears to me, that he is not entitled to any compensation therefor, upon the principles already stated; because, by the act of 1799, c. 128, § 21, when there is no surveyor assigned by law for a particular port, the collector of the customs is required to perform the duties of a surveyor, as far as may be.

The last objection, and that upon which I have felt the most difficulty, is the ruling of the learned judge upon the point, that the defendant, Andrews, requested the judge to instruct the jury, that he was entitled to compensation for office-rent, fuel, clerk-hire and stationery, which he had paid and expended in his office, as collector, of which he had presented a yearly account to the treasury department, and no part thereof had been allowed to him; but, on the contrary, had been disallowed. But the judge refused so to instruct the jury; but instructed them, that Andrews was not, by law, entitled to any allowance for the said expenditures.

No particular ground is stated in the record for this instruction given by the learned judge; and, therefore, if maintainable at all, it must be upon the general ground, that no allowances are by law to be made for such expenditures; or, if allowable, that they were not in due and proper season presented to the treasury department for allowance. It appears to me very clear, that these expenditures are properly to be deemed incidents to the office of the collector, and, therefore, that they ought to be allowed as proper charges against the United States. The act of 1799, c. 129, § 2, manifestly contemplates the allowance of them. It provides, that, "it shall be the duty of the respective collectors, &c., to keep accurate accounts of all fees and special emoluments received by them; also, of all expenditures,

particularizing the expenditures for rent, fuel, stationery, and clerk-hire; and to transmit annually, within forty days after the last of December, an account, verified on oath or affirmation, to the comptroller of the treasury, &c.; and if any collector, &c., shall omit or neglect to keep an account as aforesaid, or to transmit the same, verified as aforesaid, he shall forfeit and pay a sum not exceeding five hundred dollars, for the use of the United States."

It does not appear, from the bill of exceptions, whether Andrews did, in fact, keep such an account, or transmit it yearly to the department, as required by law. All that the bill of exceptions states, is, "that he had presented a yearly account of such expenditures, to the treasury department, and that no part of the same had been allowed to him," &c. Now, it may be, that this language refers only to the final claim made and disallowed at the treasury department, which is required by the act of 1797, c. 74, § 4, to entitle the party to an equitable set-off, in the present suit. If so, that is not such an account as the act of 1799, c. 129, § 2, requires. It may be, that it was intended to refer to the keeping and transmission of the accounts, as required by the latter act. The language is somewhat equivocal and uncertain. But construing it most unfavorably for Andrews, and that he did omit or neglect to keep and transmit such yearly account every year, as this latter act requires, still I think, that he did not forfeit his right to be reimbursed the amount of his expenditures for these purposes; and, at most, he incurred only the statute penalty, not exceeding five hundred dollars, as an indemnity to the United States, for any loss sustained thereby. Suppose these expenditures for one year had amounted to $10,000, as in some districts they might, and the accounts were not transmitted until more than forty days had elapsed after the last of December of that year: it would hardly be contended, that the whole claim was extinguished. And yet, such must be the result, if we construe the statute, by imposing a penalty, to have extinguished the claim, as soon as the penalty was incurred. I think that, not a natural, or necessary, or reasonable construction of the statute. It is not said, that the claim shall, by the omission or neglect, be forfeited or extinguished; and for the court so to interpret the statute, would be to enlarge the words, and the intent, and to create penalties beyond what the statute has declared. No rule in the interpretation of penal statutes has ever been carried to such an extent. On the contrary, the general rule universally recognized, is that penal statutes are to be construed strictly. They are never extended by implication. The penalty, itself, is not a fixed penalty. It is not to exceed five hundred dollars. It may be only one dollar. It appears to me, therefore, that the instruction of the learned judge is not correct in

point of law; and has proceeded upon a ground, which the statute does not justify; and which the principles, established in other cases, as to equitable allowances, disclaim. My opinion, therefore, is, that the judgment of the district court must be reversed; and a venire facias de novo be awarded for a new trial of the whole cause at the bar of this court. Judgment reversed.