UNITED STATES v. REED.

(Circuit Court of Appeals, Second Circuit. April 19, 1894.)

No. 94.

SEAMEN—SHIPPING COMMISSIONERS' EXPENDITURES.
    Under Act June 26, 1884, c. 121, § 27, which provides for audit and payment of expenses of shipping commissioners, expenditures required to enable a commissioner to discharge his official duties and to maintain the "suitable premises" therefor required by Rev. St. § 4507, are a proper charge against the United States, and the provisions of the act in that respect are not repealed by Act June 19, 1886, § 1, providing for payment of compensation to the commissioners and their clerks only.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was an action by James C. Reed against the United States, brought under Act March 3, 1887 (24 Stat. 505), for expenditures by him as shipping commissioner. The circuit court rendered judgment for plaintiff. The United States appealed.

Henry C. Platt, U. S. Atty., and Charles D. Baker, Asst. U. S. Atty., for the United States.

George E. P. Howard, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff, prior to July 1, 1884, had been duly appointed shipping commissioner of the United States

at the port of New York, had duly qualified, and entered upon the discharge of his duties. He continued to hold that office and discharge its duties until March 1, 1891. During part of this period he occupied rooms in the United States barge office. Subsequently, by direction of the secretary of the treasury, he removed his offices from said barge office, and procured offices at No. 25 Pearl street, and storage room for deceased seamen's effects at No. 19 Pearl street, in said city. Between the 1st day of July, 1886, and the 1st day of March, 1891, the plaintiff incurred various expenses and made various disbursements, amounting in the aggregate to the sum of $4,033.71, for rent of offices and storage of deceased seamen's effects, cost of said removal of his offices, for stationery, telephone service, for Maritime Register, ice, freight on blanks, safe-deposit vault, telegrams, repairs, etc. The record shows that these were proper, necessary, and reasonable expenditures, required to enable the commissioner to comply with the statutes and regulations relating to his official duties. Without them, it would not be practicable for him to discharge those duties, to make his official reports, or to maintain the "suitable premises" for the transaction of the public business which the law requires. Rev. St. U. S. § 4507. That any of the items charged for are unreasonable in amount, or the prices excessive, nowhere appears.

It is unnecessary to enter into any extended discussion as to the provisions of the original act of 1872, which created the office, regulated its administration, and fixed the fees to be paid and the compensation to be received by the commissioner out of those fees. Reference may be had to In re Shipping Com'r of Port of New York, 13 Blatchf. 339, Fed. Cas. No. 12,792. Nor has section 4507, Rev. St. U. S., which requires the commissioner to lease suitable premises at his own cost, any bearing upon the questions here raised, inasmuch as the subsequent act of June 26, 1884, c. 121, § 27 (23 Stat. 59), is controlling of the case at bar. It reads as follows:

"Section 27. The secretary of the treasury shall appoint a commissioner for each port of entry which is also a port of ocean navigation, and which in his judgment may require the same; such commissioner to be termed a shipping commissioner, and may from time to time remove from office any such commissioner whom he may have reason to believe does not properly perform his duties, and shall then provide for the proper performance of his duties until another person is duly appointed in his place. Provided, that shipping commissioners now in office shall continue to perform the duties thereof until others shall be appointed in their place. Shipping commissioners shall monthly render a full, exact and itemized account of their receipts and expenditures to the secretary of the treasury, who shall determine their compensation and shall from time to time determine the number and compensation of the clerks appointed by such commissioner with the approval of the secretary of the treasury subject to the limitations now fixed by law. The secretary of the treasury shall regulate the mode of conducting business in the shipping offices to be established by the shipping commissioners, as hereinafter provided, and shall have full and complete control over the same, subject to the provisions herein contained; and all expenditures by shipping commissioners shall be audited and adjusted in the treasury department in the mode and manner provided for expenditures in the collection of customs. All fees of shipping commissioners shall be paid into the treasury of the United States, and shall constitute a fund which shall be used under the direction of the secretary of the treasury to pay

the compensation of said commissioners and their clerks and such other expenses as he may find necessary to insure the proper administration of their duties."

Expenses such as these now under consideration appear to have been audited by the treasury department, as a proper charge against the United States, and paid down to July 1, 1886. Where the statute which renders such expenditures a necessary incident to an office does not expressly or by clear implication provide that they shall be paid for by the incumbent of the office out of his compensation, they are, under the authorities, a proper charge against the United States. Andrews v. U. S., 2 Story, 202, Fed. Cas. No. 381; U. S. v. Flanders, 112 U. S. 92, 5 Sup. Ct. 67. The statute last quoted expressly provides for their audit, adjustment, and payment.

The appellant refers to the act of June 19, 1886 (24 Stat. 79), the first section of which is as follows:

"Section 1. On and after July 1, 1886, no fees shall be charged or collected by inspectors of steam-vessels or shipping-commissioners, for the following services to vessels of the United States. [Here follows a long enumeration.] Collectors or other officers, inspectors of steam-vessels and shipping commissioners who are paid wholly or partly by fees shall make a detailed report of such services and the fees provided by law, to the secretary of the treasury, under such regulation as that officer may prescribe; and the secretary of the treasury shall allow and pay from any money in the treasury not otherwise appropriated, said officers such compensation for said services as each would have received prior to the passage of this act; also such compensation to clerks of shipping commissioners as would have been paid them had this act not passed: provided, that such services have, in the opinion of the secretary of the treasury, been necessarily rendered."

The contention that this section repeals the provisions of the act of 1884 (supra) as to expenditures by shipping commissioners other than for clerks is wholly without merit. There is nothing in the act last quoted which is susceptible of any such construction. It contains no repealing clause, it does not refer directly or indirectly to such expenditures, nor does it necessarily imply any intention to impose the burden of maintaining suitable premises for the transaction of the public business, which the shipping commissioner is expressly required to procure (section 4507, U. S. Rev. St.), upon him instead of upon the government, which requires it to be maintained, and which had assumed the obligation of maintaining it, and paying the necessary expenses thereof, under the acts of 1872 and 1884.

There is no weight in the suggestion that, at the time the compensation of the shipping commissioner was fixed under the section above quoted from the act of 1884, "he was informed that it was to be understood that from such compensation he should pay all his official expenses except for employes and rent." The law regulating this subject is to be found, not in the "understanding" of some former secretary of the treasury, nor in the "information" given to the plaintiff, but in the statute itself, which is too clear and unambiguous to admit of but one construction. The judgment of the circuit court is affirmed.