## UNITED STATES v. SWIGGETT.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1897.)

No. 350.

1. LOCAL LAND OFFICES—COMPENSATION OF RECEIVER—ALLOWANCES FOR OFFICE RENT, ETC.

The sundry civil appropriation acts, which carry the expenditures of the local land offices, and which provide merely that the amounts appropriated are for salaries and for contingent expenses, without declaring that they are in full for these purposes, show no intent to diminish the compensation of the receiver by requiring him to bear the expense of office rent; and where the secretary of the interior, in allotting to various land offices the sum appropriated, refuses to allow to a particular office any amount for rent. there is an implied obligation on the part of the government to reimburse the register for moneys expended for necessary office rent. 78 Fed. 456. affirmed.

2. SAME—DISTRIBUTION BY SECRETARY OF INTERIOR.

Under the terms of the sundry civil appropriation acts, which simply provide a gross sum for contingent expenses of "the several land offices," it is the duty of the secretary of the interior to make an equal distribution of

83 F.—7

the sum among the several land offices; having regard, in the matter of rent, for those offices not accommodated in government buildings.

In Error to the District Court of the United States for the District of Montana.

The writ of error is sued out by the United States, the defendant in the court below. Samuel A. Swiggett brought suit against the United States to recover the sum of $699, money expended by him for the necessary rent of the land office of the United States in and for the Helena land district, Mont. The United States filed an answer denying, among other things, that any money had been appropriated by the United States for the payment of the rent of said office. Evidence having been introduced, the cause was submitted to the court, which made the following findings of facts: "First. That Samuel A. Swiggett is a resident of Helena, state of Montana. Second. That he was appointed register of the United States land office for the Helena land district of Montana, in May, 1890, and served as such officer from the 3d day of July, 1890, to the 1st day of June, 1894. Third. That during said dates the said land office for the district of Helena, Montana, was established by law at the city of Helena, said state, and that in order that the business pertaining to said office should be properly conducted a place or office was required, that the same should be kept open during business hours, and that it was necessary that said office should be kept, not only for the transaction of the business pertaining to said office, but was also necessary as a place for the keeping of the books, records, papers, and files pertaining to said office, and the furniture used therein, the property of the United States. Fourth. That petitioner, in company with the receiver of said land office, took charge of the rooms used as, and provided as, an office, and of the books, records, papers, files, and furniture therein, and that they did occupy said rooms in discharge of their respective duties as register and receiver during the time they held said offices, and that said records, books, files, and furniture were kept in the same during that period. Fifth. That during the time said petitioner and receiver occupied as an office said rooms the United States failed to pay any part of the rent for the same; that the petitioner during said time paid on said rent, for and on behalf of the United States, to the end that said land office might be maintained, the sum of six hundred and ninety-nine dollars; that said expenditure was necessary in order that the said land office of said Helena land district, Montana, should be kept open, and the business of the United States pertaining to the sale of public lands in said district should be properly transacted; and that the sum so paid was a reasonable and proper sum for that purpose. Sixth. That the salary petitioner was to receive was to equal three thousand dollars per annum, provided the salary and fees received for the discharge of the duties of said office amounted to that sum; that the earnings of said office of register amounted to more than said sum, to wit, three thousand and two hundred dollars per annum, and that said sum was paid into the treasury of the United States as required by law; that the United States paid to petitioner the said sum of three thousand dollars, but although petitioner presented his account for the sum so paid for rent as above stated to the proper officers of the United States, and demanded payment therefor, the United States failed and refused to pay the same." From these findings of facts the court found, as a conclusion of law, "that there was an implied contract on the part of the United States to refund and pay to the petitioner the said sum of six hundred and ninety-nine dollars; being the full amount of said rent for rooms for said United States land office paid by him, said petitioner." Judgment was accordingly rendered in favor of the plaintiff for the sum of $699. There are only two assignments of errors, which are as follows: "(1) The court erred in finding, as a conclusion of law, that there was an implied contract on the part of the United States to refund and pay to petitioner the sum of six hundred and ninety-nine dollars; being the amount of said rent for rooms for said United States land office paid by him, the petitioner. (2) The court erred in giving petitioner judgment for the sum of six hundred and ninety-nine dollars against the defendant, the United States."

H. S. Foote, U. S. Atty., and Samuel Knight, Asst. U. S. Atty.
Geo. M. Bourquin, for defendant in error.

Before ROSS and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge, after stating the case as above, delivered the following opinion:

It is provided in section 2237 of the Revised Statutes that "every register and receiver shall be allowed an annual salary of five hundred dollars." In section 2238 it is further provided that registers and receivers, in addition to their salaries, shall be allowed certain fees and commissions on the business transacted in their respective land offices. Section 2240 provides that the compensation of registers and receivers, including salary, fees, and commissions, shall in no case exceed, in the aggregate, $3,000 a year each. It appears from the findings that the earnings of the register at Helena, Mont., for the period in question, were $3,200 per annum, and that this sum was paid into the treasury of the United States, as required by law; that the register was paid a compensation of $3,000 per annum, but was not reimbursed the amount paid by him for the rent of rooms for the land office at that place during his term of office, from July 1, 1890, to May 30, 1894. The defendant in error contends that a reasonable expenditure for office rent was authorized by law, and that its disallowance to him diminished his salary for official services to that extent below the maximum amount he was entitled to receive under the law. It is practically conceded, although not found as a fact by the court, that the reason why the register was not reimbursed for his expenditure for office rent was the lack of sufficient appropriations by congress to pay the office rent for the several land offices in the United States for the period in question. Whether there is an implied contract on the part of the government to continue a specified salary, or reimburse a public officer for a necessary and reasonable expense incurred in connection with the duties of his office, depends largely upon the method congress has adopted in providing for the salary or expenditures of the particular office or service, and the circumstances of the particular case. In U. S. v. Fisher, 109 U. S. 143, 3 Sup. Ct. 154, the question was whether the chief justice of the territory of Wyoming was entitled to receive a salary at the rate of $3,000 per annum, as provided in section 1879 of the Revised Statutes, or at the rate of $2,600 per annum, as provided by the acts making appropriation for the legislative, executive, and judicial expenses of the government. These last-named acts provided that the appropriations were "in full compensation for the service" of the fiscal years to which they related. The supreme court held that the later act must prevail, and the earlier act, for the term covered by the appropriation acts, be considered as suspended. The claim for the higher salary was therefore rejected. In the case of U. S. v. Mitchell, 109 U. S. 146, 3 Sup. Ct. 151, the question was whether an Indian interpreter, serving at an agency in Nebraska, was entitled to receive a salary at the rate of $400 per annum, as fixed by the Revised Statutes, or a salary of $300, as provided by the Indian appropriation acts, where the appropriations were made specifically for the pay of seven interpreters in Nebraska at $300 per annum. The interpreter receipted for his salary at $300 per annum in full for the period in question.

The supreme court held that it was plainly the intention of congress, by the appropriation acts, to fix the annual salary of the interpreter at $300, and the claim was disallowed. In the case of U. S. v. Langston, 118 U. S. 389, 6 Sup. Ct. 1185, the court had under consideration the effect of the omission from the consular and diplomatic appropriation acts of the provision that the salaries provided in these acts for the officers named should be "in full for the annual salaries thereof." The acts had reduced the salary of the minister to Hayti from $7,500 to $5,000 per annum, and the question was whether, in view of the omitted provision, he was entitled to recover the difference in the court of claims. The supreme court held that there was nothing in the acts appropriating the lesser sum from which it might be inferred that congress intended to repeal the act fixing the salary of the minister at $7,500, and this salary was accordingly allowed. These cases, and others that might be cited, indicate that, where an appropriation is insufficient to pay an officer of the government a previously fixed compensation, the terms of the appropriation (that is to say, whether the appropriation provides that the amount appropriated is in full compensation or not) may be considered, in ascertaining whether the government is liable for the original salary of the officer. The same rule would appear to be applicable to the question of liability of the government for the necessary and reasonable contingent expenses of an office. For many years prior to the period involved in this case, congress had appropriated varying sums of money to defray the expenses of the several land offices in the United States; one gross sum being appropriated annually for the salaries of the registers and receivers, and another for the contingent expenses of the offices, including clerk hire, rent, and other incidental expenses. In these appropriations congress had recognized the rent of a land office (when the office was not in a federal building) as a legitimate expense of the government. In the act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1891, and for other purposes, approved August 30, 1890 (26 Stat. 389), it is provided, under the head of the "Collection of Revenue for Sales of Public Lands," as follows:

"For salaries and commissions of registers of land-offices and receivers of public moneys at district land-offices, at not exceeding three thousand dollars each, five hundred and fifty thousand dollars, and for contingent expenses of land offices: For clerk-hire, rent and other incidental expenses of the several land-offices, one hundred and seventy-five thousand dollars."

The appropriations for the years 1892, 1893, and 1894 are in precisely the same terms, the only difference being in the amounts appropriated. For 1892, for salaries and commissions of registers and receivers, $600,000, and for contingent expenses, $200,000, are appropriated (26 Stat. 970); for 1893, for salaries and commissions of registers and receivers, $550,000, and for contingent expenses, $175,000 (27 Stat. 368); and for 1894, for salaries and commissions of registers and receivers, $520,000, and for contingent expenses, $150,000 (27 Stat. 591). It will be observed that gross sums are appropriated to defray the salaries and commissions and certain contingent expenses in "the several land offices," but no method is indicated for

the distribution of the sums appropriated for contingent expenses. By section 2256 of the Revised Statutes, as amended, it appears that in 1891 there were 123 land offices in the United States, 14 of which were established in 1890; but there is no classification of these offices, either in the Revised Statutes or the appropriation bills, by which it can be determined what offices are entitled to be allowed for contingent expenses, or how much allowed to each. It is true that section 2255 of the Revised Statutes provides that the secretary of the interior is authorized to make a reasonable allowance for office rent for each consolidated land office, but what offices are consolidated land offices it would be difficult, and perhaps impossible, to determine from the statutes; and as it is not found as a fact that the land office at Helena, Mont., was a consolidated land office, it may be assumed that it was not. But the fact, whatever it may be, is perhaps immaterial, since the appropriations now under consideration were all made subsequent to the enactment of the Revised Statutes; and as they do not recognize the distinction of consolidated land districts, in providing for the contingent expenses of the several land offices, it is to be inferred that the distinction was not intended to be continued by congress, and that the terms of the appropriation were to be followed in the distribution of the amount appropriated. That this was the view entertained by the secretary of the interior appears from his action in the matter. In the reasons given by the court below for the conclusions it reached in the case, it is stated that it appeared from a letter of the secretary of the interior, in evidence in the case, that, when these appropriations have been insufficient to pay the rent of all such offices, he has designated the offices of which the office rent should be paid, and, according to his sense of justice, has designated that the office rent at places where the register and receiver was entitled to a salary of $3,000 per annum should not be paid. This action was clearly not in accordance with the requirements of section 2255 of the Revised Statutes, and we may therefore dismiss the further consideration of that section as authority for the refusal of the secretary of the interior to make a reasonable allowance out of the appropriations for the rent of the land office at Helena, Mont. But neither was it authorized by the terms of the appropriation, which provided for the contingent expenses of the "several land offices," without reference to the compensation of the register and receiver derived from the volume of business transacted at such offices. It is plain that, had the secretary of the interior followed strictly the terms of the appropriation acts, he would have made an equal distribution of the amount appropriated for contingent expenses among the several land offices of the United States; having regard, in the matter of rent, for those offices not accommodated in government buildings. But it is contended that the insufficiency of the appropriations made by congress to meet the requirements of the department in this respect imposed upon the secretary of the interior the necessity of exercising his discretion in making some reasonable and equitable distribution of the fund appropriated, and when this discretion has been exercised the liability of the govern-

ment for any deficiency was at an end. It is undoubtedly the law that where congress intrusts a public officer with the expenditure of a sum of money for a designated purpose, without restriction or limitation as to details, the exercise of the judgment and discretion of such officer cannot be reviewed by the courts for the mere purpose of determining whether or not the authority was exercised in the most judicious manner, but it does not follow that an expenditure by an officer under such authority limits the liability of the government under the law. The sundry civil appropriation acts, which carry the expenditures of the land offices, are not limited in terms, as are the legislative, executive, and judicial, the diplomatic and consular, and the agricultural appropriation acts. In these last acts it is expressly provided that the appropriations are in full compensation for the services, purposes, and objects therein expressed, while in the sundry civil appropriation acts the appropriations are simply for the objects therein expressed, without any conditions whatever. Moreover, the insufficiency of these acts is frequently supplied by what is called a "deficiency bill"; and, as an example of such appropriations, we find the acts of March 3, 1891 (26 Stat. 878), and December 21, 1893 (28 Stat. 18), each provided an appropriation of $25,-000 for the deficiency in the appropriation for clerk hire, rent, and other incidental expenses of the several land offices for the years 1891 and 1894. There is certainly nothing in the terms of these appropriation acts indicating a purpose on the part of congress to reduce the salaries of the registers of the district land offices, or to subject any of them to the expense of office rent during the period in question. The case of Bane v. U. S., 19 Ct. Cl. 644, is cited as being in point in determining the liability of the government in this case. In that case the claim of the receiver of public moneys at Salt Lake City for rent of office had been transmitted to the court of claims by the secretary of the interior, under the provisions of the Bowman act (section 2, Act March 3, 1883; 22 Stat. 485); and the question was whether the claimant had a legal claim against the department of the interior for reimbursement of the money paid by him for that purpose. The court found that he had not, and so reported its findings to the department. In general, the departments of the government are limited, not only in their expenditures, but in their contracts, to the appropriations made to defray the expenses of the government for each fiscal year. Rev. St. §§ 3679, 3732. But as said by the court of claims in Semmes v. U. S., 26 Ct. Cl. 119, 130:

"These provisions undoubtedly apply to express contracts, and prohibit the making of such contracts except as therein provided. They have no application to that class of implied contracts which arise from the acts of public officers, in the performance of their duties, in carrying on the business of the government intrusted to them by law in their respective spheres."

It was accordingly held in that case that the postmaster general, being authorized by law to establish post offices, may procure buildings for them, and, while he cannot bind the government by an express contract, his action will render it liable for a just compensation for rent. The liability in that case ran to the owner of the building, because he had not been paid by the postmaster general; but it is not

perceived that there is any difference in principle in such a case and where the rent has been paid by an officer of the government in the discharge of a necessary duty.   There is, clearly, a wider range to the liability of the government arising directly from the legislation of congress than there is under the limited agency of a department; and it is equally clear from this later case that the doctrine of Bane v. U. S., advising the interior department as to its liability, as an agent of the government, under the appropriation act, does not, in the opinion of the court of claims, determine the liability of the government under the law and the facts of a case like the one at bar.

In U. S. v. Reed, 20 U. S. App. 595, 9 C. C. A. 563, and 61 Fed. 414, the United States shipping commissioner at the port of New York had incurred expenses and made disbursements for various purposes connected with the administration of his office, including a sum for rent of offices.   It appeared from the record in the case that the expenditures were necessary and reasonable and required, to enable the commissioner to comply with the statutes and regulations relating to his official duties.   The original act of June 7, 1872, which created the office, regulated its administration, and fixed the fees to be paid and the compensation to be received by the shipping commissioner, provided that every commissioner should lease, rent, or procure, at his own cost, suitable premises for the transaction of business, and for the preservation of the books and other documents connected therewith.   This act was amended by the act of June 26, 1884, which provided that all expenditures by shipping commissioners should be audited and adjusted in the treasury department, in the mode and manner provided for expenditures in the collection of customs, and that all fees of shipping commissioners should be paid into the treasury of the United States, and should constitute a fund which should be used, under the direction of the secretary of the treasury, to pay the compensation of the commissioners and their clerks, and such other expenses as they might find necessary to insure the proper administration of their duties.   Under the law as it thus stood, expenses of this character in controversy were audited and paid by the treasury department; but the law was again amended by the act of June 19, 1886, which provided that the secretary of the treasury should allow and pay the commissioners such compensation for their services as each would have received prior to the passage of the amendatory act; also, such compensation to clerks of commissioners as would have been paid them had the amendatory act not passed.   Pursuant to this amendment the claim of the shipping commissioner at New York for rent and other incidental expenses was disallowed, and he brought suit in the circuit court to recover the amount, where a judgment was rendered in favor of the plaintiff.   The case was taken to the circuit court of appeals, where it was contended on behalf of the United States, among other things, that the amendment of 1886 repealed the provision of the act of 1884 as to expenditures by shipping commissioners, other than for clerks.   The court held that this defense was without merit, and that where the statute which renders such expenditure a necessary incident to an office does not expressly, or by clear implication, provide that they shall be paid by the incumbent

of the office, out of his compensation, they are, under the authorities, a proper charge against the United States; citing the case of Andrews v. U. S., 2 Story, 202, Fed. Cas. No. 381; U. S. v. Flanders, 112 U. S. 88, 92, 5 Sup. Ct. 67. The judgment of the circuit court was accordingly affirmed, and the United States appealed to the supreme court, where the further defense was made that the secretary of the treasury had failed to allow the shipping commissioner any of his expenses for rent or otherwise, upon the ground that congress had failed to make any appropriation for that purpose. The court appears to have given no weight to this feature of the statutes, and, referring to the merits of the case, said:

"The government's claim that the commissioner was to meet rent and expenses out of his salary might result in the application of his entire salary to that purpose. We are not willing to construe the statute so as to require so unreasonable a result."

The decree of the circuit court of appeals was affirmed. U. S. v. Reed, 167 U. S. 664, 17 Sup. Ct. 919. That case appears to be directly in point, and virtually disposes of the question involved in the present case.

It appears from the findings that the land office for the district of Helena, Mont., was established by law; that an office at that place was required for the transaction of the business pertaining to the office; that it was also necessary as a place for the keeping of the books, records. papers, and files belonging to the office; and that the amount paid for the rent was reasonable and proper for that purpose. In view of these facts, and the general character of the appropriations for the contingent expenses of the several land offices, and the lack of authority on the part of the secretary of the interior to withhold an allowance for the rent of the land office at Helena, the court is of opinion that an implied contract did exist, on the part of the government, to reimburse the register the amount expended by him for that purpose. The judgment is affirmed.