Ranney, J.
The plaintiff in error was indicted under the act of February 9, 1846, “ To prohibit the sale of intoxicating liquors, in the vicinity of certain manufacturing establishments, in the counties of Scioto, Lawrence, and Jackson.” On trial, he was found guilty of having sold, on March, 10, 1848, one quart of whisky, to one Andrew J. Razor, at his grocery store, within three miles of a foundry owned by Peebles, Wood & Co., in the county of Lawrence. We do not propose to notice but one of the eri’ors assigned by the plaintiff. It appears by the bill of exceptions, that it was proved to the jury on the trial, that the foundry was ex-ected in the month of February, 1848; that the grocery, at which the liquor was sold, was a regular place of bxxsiness before the foundry was built, and *had been con-
tinuously kept, from before the building of the foundry until after the sale of the liquor charged in the indictment. On this state of facts, the plaintiff in error requested the court to charge the jury, “that if the grocery mentioned in the indictment was an established place of business at the time when said foundry was built, and has been continued as such since, the selling alleged in the indictment was not an unlawful selling.” This instruction the court refused to give, and in this we think they erx’ed. The act upon which the indictment is founded, subjects to a fine of from ten to one hundred dollar's, or imprisonment in the county jail from ten to thirty days, or both, any person who shall “ sell, . or expose to sale, any spirituous or intoxicating liquox’S, at any place within a distance of three miles of any iron-furnace, fox’go, ■ or foundxy, used for the manufacturixxg of pig-iron, bar-iron, blooms, or iron-castings, within the counties of Scioto, Lawrence, and Jackson, in this state, except such furnace, forge, or foundry be located in the town of Portsmouth.” Several considerations connected with the policy of this law are not easily understood. If right in itself, why should its blessings have been confined to three counties? If necessary for the manufacturing intei’ests, why confine it to those of iron alone? And upon what principle do the people of the town of Portsmouth obtain a dispensation to *14 do acts that are made highly criminal when committed by those not fortunate enough to live within her corporate limits ? But it is a law, and although we may not be able to see far enough to fathom its wisdom, we are bound to give it a fair construction and enforce its provisions. It is a highly penal law, punishing the sale of spirituous liquors, in any quantity, when, by the general law of the state, a quantity above a quart could be freely sold, and inflicting imprisonment upon the offender, in addition to a large fine, which it is believed no general law has ever done. It has long been settled that all such laws must be strictly construed. They can not be extended by implication to cases not strictly within their terms. Andrew v. United States, 2 Story, 202.
*The plaintiff in error, at the time this law passed, and for two years afterward, was engaged, so far as we know, in a lawful commerce. His place of business did not stand upon interdicted ground. He was not within a marine league of one of the favored establishments.
He was outside of the territorial limits covered by the law; it did not extend to him or over him; and the question is, could Peebles, Wood & Co., two years after its passage, carry it there, extend it over him, and break up his business? We think not. The statute prohibits the sale of spirituous or intoxicating liquors, within three miles of any iron-furnace, forge, or foundry within the counties named. There is no intimation in the act that it is to extend to establishments erected after its passage."
A well-settled rule of construction here comes in to our aid, which is, that “ a statute referring to, or affecting persons, places, or things, is limited in its operations, to persons, places, or things as they existed at the time the statute was passed.” I shall refer but to one case in illustration of this rule, and if I do not misjudge, it is identical in principle with the present.
It is the case of the United States v. Paul, 6 Pet. 141. The prisoner was indicted in the Circuit Court of the United States for the Southern District of New York, in October, 1830, and charged with breaking, with ah intention to steal, into a store situated at West Point, in the State of New York, and within the sole and exclusive jurisdiction of the United States. The indictment was founded upon section 3 of the act of Congress, entitled “ an act more effectually to provide for the punishment of certain crimes *15 against the United States, and for other purposes,” passed March. 3, 1825. This section provides that “ if any offense shall be committed in any of the places aforesaid [forts, dock-yards, etc., ceded by a state to the United States], the punishment of which, offense is not specially provided for by any law of the United States, such offense shall, upon a conviction in any court of the United Slates having cognizance thereof, be liable to, and receive the same punishment as the laws of the state, in which such fort, *elc., is situated, provide for the like offense, when committed within the body of any county of such state.” The offense charged in the indictment was not burglary by the laws of New York, in 1825, but was made so in 1829. The question was whether this section was to be limited to the laws of the several states, in force at the time of its enactment, and upon this question the circuit court divided. The Supreme Court held that it was; that although the charge against the defendant was made burglary in 1829, a year before he had broken into the store, the prosecution was confined to the laws of the State of New York in force at the time the act of Congress was passed. The law of Congress refers to the “ laws of the state in which such fort, etc., is situated.” This statute refers to “ any iron-furnace, forge, or foundry within the counties of Scioto, Lawrence, and Jackson.” It would be quite as unwarrantable to extend this statute to all furnaces, forges, and foundries that might be afterward erected, as it would the act of Congress to laws of the states afterward- passed. We therefore give this extraordinary law a local habitation, by holding that it extended for three miles around every furnace, forge, and foundry in the counties of Scioto, Lawrence, and Jackson, existing at the time of its passage, always exempting the town of Portsmouth; and that it is not migratory in its habits or capacities—that it only punishes those who go within its reach, and does not go after them. It is only when Mahomet goes to the mountain, and not when the mountain comes to Mahomet, that its penalties can be invoked.
The judgment is reversed.