AJAX CONTRACTORS, INC.,
Plaintiff in Error,

v.

H. L. MYATT, Hoyt Shadid, Leonard Merritt, John R. Harmon, Kenneth Crossland, C. M. Stewart, Earl Presley, Baxter Henry, Lawrence Chambers and Fred Slack, as Mayor and Councilmen of the City of Altus, Oklahoma, Defendants in Error.

No. 41699.

Supreme Court of Oklahoma.

Jan. 24, 1967.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

Rhodes, Hieronymus, Holloway & Wilson by Russell B. Holloway, and Robert P. Hall, Oklahoma City, for defendant in error, H. L. Myatt.

DAVISON, Justice.

This is an appeal by Ajax Contractors, Inc., herein referred to as "Ajax," from a judgment in favor of H. L. Myatt, plaintiff below, adjudging certain proceedings of the City Council of the City of Altus to be void and vacating such proceedings.

The judgment was rendered in an action filed by Myatt, as a resident and taxpayer, against Mayor, Hoyt Shadid, and the eight members of the City Council including one Leonard Merritt. Ajax intervened in the action.

The matter is submitted to this court upon the record made in the lower court and by briefs and oral argument in this court. There appears to be no dispute as to the facts upon which the lower court based its judgment. The City Council had advertised for bids for construction of a twenty inch water transmission line as a part of the Round Timber Water Project with alternate specifications for at least two types of

pipe. The bids were opened at a meeting of the City Council on June 21, 1965, with the Mayor and all Councilmen present. Ajax submitted a bid of $827,507.55 on a certain type of pipe and one Three R Construction Co., had bid $710,325.72 on another type of pipe. On a motion to accept the bid of Ajax the City Council voted four for and four against the motion with Leonard Merritt voting in favor of the motion. The Mayor then broke the tie vote and voted in favor of the motion to accept the bid of Ajax.

Plaintiff filed the present action on June 24, 1965, to restrain and enjoin the defendants Mayor and Councilmen from executing any contract or doing any further act to finalize and complete an agreement between the City of Altus and Ajax with reference to the water transmission line. The issues made up by the petition, the response of the defendants, and the petition in intervention of Ajax, were: (1) whether the defendants Mayor and Council acted on proper and justifiable grounds in accepting and approving the higher bid of Ajax and in effect rejecting the lower bid of Three R Construction Co., and (2) whether on and at the meeting of the Council held June 21, 1965, the defendant Leonard Merritt was qualified and entitled to vote as a member of the City Council. Plaintiff alleged that the office of Councilman for the city ward in which Merritt had been elected had become vacant because Merritt had moved from the ward prior to such meeting and Merritt's vote was a nullity, and consequently the true and legal vote of the Council on the motion to accept the bid of Ajax was four to three against such acceptance. Ajax denied the Council seat held by Merritt had become vacant and alleged that in any event Merritt was acting as a de facto Councilman, and further that Ajax had a valid and binding contract with the City of Altus.

Trial of the matter was held July 6, 1965. It was stipulated that Merritt had moved from the ward in which he had been elected a member of the City Council and that such removal was prior to the vote on the bids

at the meeting of June 21, 1965. The trial judge limited the hearing to the single issue of whether Merritt was a member of the Council and qualified to vote at the meeting of June 21, 1965, stating:

"* * * but the issue, as the Court sees it, is whether or not at the council meeting on whatever date is stated, Leonard Merritt was a member of the council and whether or not he was qualified to vote. That matter I would like to take up first. I don't believe it is the duty or province of the Court to go into whether this was or wasn't the best material. The only question I propose to hear at this time is the question of legality. * * *

\* \* \* \* \* \*

"regardless of what is contained in the pleadings, this Court has stated, just as Mr. Harbison has stated, that I am limiting the issues this morning to the legal question of whether or not Mr. Merritt was entitled to vote and whether the vote was legal according to law. * * *"

In accordance with the court's ruling the hearing was limited to this issue. Based upon the stipulation and the court's interpretation of the law, the court held and adjudged that the removal of Merritt from his ward created a vacancy in such Council office and Merrit was not entitled to vote and no contract was in existence or executed by reason thereof, and that the subject Council proceedings were void and were set aside and vacated, and that the entire proceeding be remanded to the City Council for such further action as, in their discretion, may be taken in connection therewith.

Ajax contends that under the admitted circumstances Merritt continued to occupy the office of Councilman as a de facto officer.

Title 11 O.S.1961, § 571, sets forth the requisite qualifications for city councilmen and provides that the removal of any councilman "from the ward, for which he shall be elected, shall cause a vacancy in said office. Vacancies in office, provided for

herein, shall be filled by appointment, by the council."

The general statute, Officers, 51 O.S. 1961, § 8, provides in part as follows:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such office:

\*     \*     \*     \*     \*     \*

"Fourth. Ceasing to be a resident of the \* \* \* city or town, or of any district thereof, in which the duties of his office are to be exercised or for which he may have been elected or appointed.

\*     \*     \*     \*     \*     \*

"The fact by reason whereof the vacancy arises shall be determined by the authority authorized to fill such vacancy."

The Oklahoma Constitution, Art. 23, § 10, concerning changes of the salary and emoluments of public officials and prohibiting extensions of their terms, states in the concluding portion thereof, as follows:

" \* \* \* Provided, That all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."

It is not controverted that Merritt was a duly qualified Councilman at all times prior to his removal from his ward and that at the time of the council meeting in question no person had been appointed to succeed him as councilman for that ward. At the time of the council meeting the office of councilman was a legal and existing office, and Merritt was in actual possession thereof, and his possession thereof was pursuant to color of title or authority by reason of his prior election to the office.

In McQuillin, Municipal Corporations, Third Edition (Revised) Vol. 3, § 12.102, p. 440, it is stated that "One who becomes disqualified to hold office while in office but continues to exercise the duties of office is a de facto officer." Several decisions are cited in support of this statement.

In State ex rel. James v. Deakyne, 5 Terry (44 Del.) 217, 58 A.2d 129, the statute provided that a person to be eligible for the office of City Councilman must be a resident of the City. An elected councilman had subsequently moved outside the City, but continued to occupy and perform the duties of that office. Several months after such removal he voted for the appointment of Deakyne to a city commission, and in an action questioning Deakyne's authority to hold the office it was urged in effect that the councilman's vote was a nullity. In rendering its decision the court assumed the councilman's removal from the City terminated his right to the office of councilman, but held that under the circumstances he was a de facto member of the City Council and his vote was valid as to third persons and the public.

See also State v. Central States Electric Co., 238 Iowa 801, 28 N.W.2d 457, and In re Oak St., 308 Mo. 494, 273 S.W. 105.

This court has in a number of cases determined that public officials were de facto officers where they lacked some qualification necessary to constitute them de jure officers and has held their acts valid where they involved the public and third persons.

In Hatfield v. Jimerson, Okl., 365 P.2d 980, the action questioned the validity of official acts of school board members on the ground that they had not qualified for the office after their election. Therein we stated:

"An 'officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the \* \* \* functions of the office are exercised by one who was in the actual possession of it under color of title."

In Sheldon v. Green, 182 Okl. 208, 77 P. 2d 114, the action was to vacate an order of an appointed district judge on the ground that admittedly he lacked the legal qualifications for such office. We held that the judge was a de facto judge on the ground that the office actually existed and that his possession of the office plus color of

title to the office by virtue of his otherwise valid appointment was sufficient to constitute him a de facto judge. The decision further held that it was a well recognized principle that the acts of a de facto officer were as valid and binding as those of a de jure officer.

The decision in the Sheldon case, supra, was based in large part upon the case of Morford v. Territory, 10 Okl. 741, 63 P. 958, 54 L.R.A. 513, in which we recognized that ministerial as well as judicial officers may have a de facto status and that the official acts of such persons are regarded as valid on the grounds of public policy, and for the protection of those having official business to transact.

■ See also Torrance v. Bladel, 195 Okl. 68, 155 P.2d 546.

Under the provisions of 51 O.S.1961, § 8, the fact by reason of which a vacancy arises in the City Council is to be determined by the authority authorized to fill the vacancy. Quoted supra. No determination of such fact had been made by the Council. It appears from this and all of the other circumstances of the meeting that the other members of the Council, the Mayor, and those in attendance, regarded and accepted Merritt as a qualified member of the Council and entitled to vote on the business presented, including the bids made on the project.

■ It is pointed out that the present action was not one where a person claiming to have a better right to the office of councilman was attacking Merritt's title to such office, but was one where Merritt's official position was being questioned in connection with a suit to set aside an act of the City Council involving third persons. It was in the nature of a collateral attack upon Merritt's title to the office. The title of a de facto officer to his office, even if he be not a good officer in point of law, cannot be collaterally attacked. Hatfield v. Jimerson, Torrance v. Bladel, and Morford v. Territory, supra.

Plaintiff relies on our decision in Baughman v. Weicker, 136 Okl. 33, 276 P. 208, in which we stated that a councilman could not move permanently from the ward in which he was elected and continue to participate as a member of the council of the city. That decision presented a situation where the council had acted and declared Baughman's office on the council to be vacant and had proceeded to elect or appoint Weicker to fill the office. Baughman's suit against Weicker was a direct attack upon Weicker's title to the office. The case did not present or contain any of the factors that would call for a determination that there was an existing de facto officer on the grounds of public policy and to protect those having official business to transact.

It is our conclusion that the contention of Ajax is correct and that Merritt was a de facto city councilman at the time of the June 21, 1965, meeting, and had authority to vote at such meeting. The trial court erred in holding that Merritt was not entitled to vote at the meeting.

We now come to a proposition, the determination of which requires a consideration of matters and proceedings extraneous to the record presented to this court when the appeal was filed. Ajax and the plaintiff H. L. Myatt are the only parties who filed briefs and made appearances herein on appeal. Both of these parties ask us to determine whether there is an existing and binding contract in favor of Ajax.

As heretofore stated, at the trial on July 6, 1965, the court limited the trial or hearing to the question of the status of Merritt and his right to vote at the council meeting. The minutes of the meeting of June 21, 1965, and the provisions of the specifications and bid proposal of Ajax were not introduced or tendered in evidence. The judgment on the limited issue was based on the pleadings and the stipulation that Merritt had moved from his ward prior to the Council meeting. At the hearing on Ajax' motion for new trial on July 16, 1965, the court refused to open the case for the admission of testimony and Ajax made an offer of testimony that, except for the restraining order issued when the case was filed, the Mayor would have

signed and delivered a formal contract to Ajax.

Ajax contends that based on the record it has a valid contract with the City Council of Altus. Plaintiff controverts this and additionally supports this by now presenting to this court the specifications governing the bid of Ajax, the minutes of the meeting of June 21, 1965, and also minutes of a Council meeting on July 8, 1965, (after the judgment) accepting the bid of Three R Construction Company.

The trial court's conclusion was based on its determination of the limited issue that the vote of Merritt was a nullity. It did not have before it any of the proceedings which are now being presented to this court. The City of Altus is not a party to this action.

■■■ We have held that in considering issues presented on appeal, the Supreme Court is confined to the record. Board of County Com'rs of Choctaw County v. Schuessler, Okl., 358 P.2d 830.

In Walden-Page Memorial Hospital v. Bentsen, Okl., 370 P.2d 5, a similar situation was presented to this court. In that case the trial court was of the opinion that the statute of limitations was the vital issue in the action and based its judgment upon the determination of that limited issue. Other issues raised by the pleadings were not determined by the court. On appeal we were asked to determine the limitation question and also the other issues not passed upon by the trial court. We limited our review to the statute of limitations issue and, upon reversing the judgment on that issue, directed a new trial on the other issues.

We think the present appeal presents an even stronger and clearer situation to justify similar action herein. It is our conclusion that this court would be usurping the function of the lower court by considering and determining the effect of evidence not even presented or tendered at the trial.

Judgment of the trial court is vacated.

All the Justices concur.