2008 OK 92

In the Matter of the ADOPTION
OF BABY G.,

Oklahoma County Public
Defender, Appellant,

v.

Adoptive Parents and Birth
Mother, Appellees.

In the Matter of the Adoption
of Baby B.,

Oklahoma County Public
Defender, Appellant,

v.

Adoptive Parents and Birth
Mother, Appellees.

In the Matter of the Adoption
of Baby L.,

Oklahoma County Public
Defender, Appellant,

v.

Adoptive Parents and Birth
Mother, Appellees.

In the Matter of the Adoption of Baby S.,

Oklahoma County Public
Defender, Appellant,

v.

Adoptive Parents and Birth
Mother, Appellees.

Nos. 105,272, 105,283, 105,273, 105,274.

Supreme Court of Oklahoma.

Oct. 7, 2008.

Robert A. Ravitz, Public Defender of Oklahoma County, Oklahoma City, OK, for Appellant.

Christopher W. Venters, Assistant Public Defender of Oklahoma County, Oklahoma City, OK, for Appellant.

Robert G. Boren, Oklahoma City, OK, for Adoptive Parents, Appellees.

James A. Ikard, Oklahoma City, OK, for Birth Mothers, Appellees.

REIF, J.

¶ 1 These companion appeals are considered together and consolidated for the sole purpose of promulgating one opinion to resolve the identical issue presented. The question is whether the Public Defender has standing to challenge the compensation awarded the adoptive parents' counsel. The Public Defender has contended that the compensation awards in question are erroneous, because they are based on "flat fee" attorney fee contracts and include non-legal administrative expenses. The Public Defender seeks (1) a ruling that these elements of compensation are not authorized by 10 O.S. Supp.2007 § 7505–3.2(B)(1)(a) through (h), and (2) a declaration that the only costs and expenses that may be awarded in adoption cases are those set forth in § 7505–3.2(B)(1)(a) through (h).

¶ 2 The Public Defender believes that standing to bring these appeals flows from its participation in the underlying cases. The Public Defender points out that the trial court in each of these adoption cases appointed the Public Defender to assist the court in review of the application for costs and expenses. These appointments were made pursuant to an administrative order issued by the Presiding Judge of the District Court of Oklahoma County. However, the Public Defender's participation in these cases is not alone sufficient to confer standing to appeal an order that is contrary to the Public Defender's view of the law.

¶ 3 Even though the Public Defender's participation did enure to the benefit of the children, the Public Defender was not appointed to represent the children. The text of both the administrative order and the individual orders appointing the Public Defender in these cases expressly states that the Public Defender is appointed to "assist the Court in review of the application for [the adoption] costs and expenses." In doing so, the courts are actually appointing the Public Defender to act as a special master.[1]

1. While there is no statutory authority for the trial court to appoint a special master to assist the court in reviewing the costs and expenses of an adoption, the power to appoint special masters is an inherent power of the judiciary. *In Re Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); *People v. Superior Court,* 25 Cal.4th 703, 107 Cal.Rptr.2d 323, 23 P.3d 563, 584–85

¶ 4 The administrative order charged the Public Defender with the duty to ensure "strict compliance with the law" in reviewing the costs and expenses of a particular adoption. In fulfilling this responsibility, the Public Defender has concluded that the only allowable costs and expenses in an adoption case are those set forth in § 7505–3.2(B)(1)(a) through (h). While this legal conclusion by the Public Defender acting as a special master does represent a strict view of allowable adoption costs and expenses, it is not binding on the appointing court. *Tribal Development Co. v. Roff*, 1912 OK 431, ¶ 2, 125 P. 1124, 1125; *Tribal Development Co. v. White Brothers*, 1911 OK 117, ¶ 0, 114 P. 736 (syllabus 4). Additionally, this conclusion fails to take into account § 7505–3.2(B)(4). This statute provides, in pertinent part, that "[t]he provisions of this subsection shall not prohibit a court from ... including any additional costs and expenses in connection with an adoption other than those specified in this subsection based on unusual circumstances or need."

¶ 5 The legislature has expressly limited standing to bring appeals in adoption cases to "any person aggrieved" by the trial court's appealable orders. 10 O.S.2001 § 7505–7.1. "Generally, if the judgment sought to be reviewed does not, by its own force, operate to impose a burden or obligation [on the appealing party], and it has no binding effect upon any right, interest, person or property of the appealing party, that appellant is not deemed aggrieved." *Cleary Petroleum Corp. v. Harrison*, 1980 OK 188, ¶ 4, 621 P.2d 528, 530 (footnote omitted).

■ ¶ 6 The orders approving the costs and expenses in the adoptions at hand do not impose a burden or obligation on the Public Defender, nor have any binding effect upon a right, interest, person or property of the Public Defender. "Conjecture or speculation about possible adverse consequences that may flow from the decision at some point in the future will not suffice to support a person's 'aggrieved' status. One cannot appeal from a decision, however erroneous, which does not affect one's substantial rights." *Underside v. Lathrop*, 1982 OK 57, ¶ 7, 645 P.2d 514, 517 (footnotes omitted). The Public Defender is simply not "aggrieved" by the refusal of the appointing trial courts to follow the Public Defender's recommendations in regard to the flat fee contracts and administrative expenses.

■ ¶ 7 In the alternative, the Public Defender asks this Court to review the orders in question in exercise of the Court's superintending control. The Public Defender contends there is a potential for adoptions to become a contest with "babies going to the highest bidder" in the absence of a strict, uniform interpretation of 10 O.S. Supp.2007 § 7505–3.2 by this Court. In declining to exercise superintending control, it is sufficient to note, "[w]e do not sit to decide hypothetical issues or to give advisory opinions about issues not yet in controversy." *Id.* at ¶ 9, 645 P.2d at 517. Nothing in the records presented suggests that the trial courts below have interpreted § 7505–3.2 to the detriment of the children involved or the greater public interest.

¶ 8 Accordingly, these appeals are dismissed and the alternative request for superintending review is denied.

¶ 9 EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR and REIF, JJ., concur.

¶ 10 COLBERT, J., dissents.

¶ 11 WINCHESTER, C.J., disqualified.

KAUGER, J., with whom EDMONDSON, V.C.J., and OPALA, J., join, concurring.

¶ 1 Although I agree that the public defender lacks standing, I believe that due to the confusion in the district courts over which adoption-related expenses are allowable, Rules for the District Courts should be promulgated to clarify the issue.

¶ 2 The Legislature has defined the crime of child trafficking at 21 O.S. Supp.2007

(2001); *State v. Doe*, 93 N.M. 621, 603 P.2d 731, 734 (Ct.App.1979). In Oklahoma jurisprudence, the Territorial Supreme Court for Oklahoma Territory recognized that "authority to appoint referees, masters, and commissioners has always belonged to the courts and judges...." *City of Guthrie v. New Vienna Bank*, 4 Okla. 194, 38 P. 4 (1894).

§§ 865–869. The central language is § 866(A)(1)(a), which provides:

> The crime of trafficking in children is defined to consist of any of the following acts or any part thereof:
>
> a. the acceptance, solicitation, offer, payment or transfer of any compensation, in money, property or other thing of value, at any time, by any person in connection with the acquisition or transfer of the legal or physical custody or adoption of a minor child, except as ordered by the court or except as otherwise provided by Section 7505–3.2 of Title 10 of the Oklahoma Statutes. . . .

Title 10 O.S. Supp.2005 § 7505–3.2 is a proviso to this criminal statute that enables courts to strike a balance between preventing child trafficking and allowing ordinary adoption-related expenses by providing a list of proper expenses that a person may pay in connection with an adoption.

¶ 3 For expenses not enumerated by § 7505–3.2(B)(1), the Legislature has created the following test: the cost or expense must 1) be "reasonable,"[1] 2) not violate 21 O.S. Supp.2007 §§ 865–869, and 3) be commensurate with other customary fees for similar services by persons of equivalent experience and training where the services are performed.[2] The application of this standard by the district court is reviewed by appellate courts for an abuse of discretion.

¶ 4 This standard has proven so difficult to apply that in Oklahoma County, District Judge Ray Elliott issued the following order:

> 1. Strict compliance with the allowable costs and expenses detailed in 10 O.S. § 7505–3.2(B) is mandatory.
>
> 2. In the future no costs or expenses shall be allowed for:
>
> a. The purchase of an automobile;

b. The payment of or providing for a vacation;

c. The purchase of a television set, radio, stereo or any other electronic entertainment equipment;

d. The purchase of a computer or computer programs;

e. The purchase of automobile parts;

f. The payment of traffic tickets, court costs in unrelated criminal cases, or driver's license reinstatement fees; or

g. The payment of utility and telephone bills for relatives of the birth mother unless directly related to the care of the birth mother and baby under 10 O.S. § 7505–3.2(B)(1)(e).

3. The public defender shall be appointed in all cases where adoption related costs and expenses are requested and shall assist the Court in the review of the application for such costs and expenses. The Public Defender shall be an advocate for strict compliance with the law. (10 O.S. § 7505–1.2)

4. The adoption courts shall require full documentation of all claimed costs and expenses be provided to the Court and included with the Court File. Any costs or expenses not fully documented shall not be allowed.[3]

It is clear that § 7505–3.2 has often not been sufficient guidance for the district courts to determine which costs and expenses are permissible. This problem is not unique to Oklahoma.

¶ 5 Nearly every state has a statute that enumerates categories of expenses that may be paid by adoptive parents. As in Oklahoma, most of these statutes do not contain outright prohibitions on specific types of ex-

---

**1.** Title 10 O.S. Supp.2005 § 7505–3.2(A)(2) provides in pertinent part:
No final decree of adoption shall be entered until the court is satisfied that all costs and expenses have been disclosed, are reasonable. . . .

**2.** Title 10 O.S. Supp.2005 § 7505–3.2(B)(2) provides:
In addition, all expenses approved by the court should be commensurate with other customary fees for similar services by persons of equivalent experience and training where the services are performed. Any services provided outside this state shall be allowed in an amount as if the services had been performed within the State of Oklahoma.

**3.** Administrative Order AD7–2006–21, *In re. Adoption Procedures*, June 1, 2006.

penses,[4] but instead rely on the maxim of statutory construction that "the expression of one thing is the exclusion of another."[5] However, a few states have expressly disallowed certain adoption-related expenses such as: 1) lost wages or salary;[6] 2) educational expenses;[7] 3) permanent housing expenses;[8] 4) vacations;[9] 5) automobiles;[10] and 6) gifts.[11] Other states simply set monetary caps on allowable expenses.[12]

¶ 6 The provision that most closely resembles Judge Elliott's order is Montana's adoption-related expenses statute. It contains a list of allowable expenses and allows for unspecified reasonable adoption-related costs, but expressly excludes several categories of expenses. Mont.Code Ann. § 42–7–101(1)(k) provides:

> Reasonable adoption fees may be paid by the adoptive parent for the actual cost of services. The cost of services must relate to
>
> . . .

other reasonable costs related to adoption that do not include education, vehicles, salary or wages, vacations, or permanent housing for the birth parent.

To provide the district courts with examples of not only the types of adoption-related expenses that are allowable, but also those that are not allowable, would certainly help to illuminate the issue.

¶ 7 Unfortunately, it has proven difficult to give the district courts guidance. The appellant, a public defender appointed as special master in the four adoption cases in question, lacks standing. Title 10 O.S.2001 § 7505–1.2 allows a trial court to appoint a guardian *ad litem* to represent the child,[13] but it appears that guardians *ad litem* have been hesitant to appeal a trial court's ruling on adoption-related costs and expenses.

¶ 8 The Supreme Court possesses exclusive supervisory and administrative authority over the inferior courts, as provided under Okla. Const. art 7.[14] The exercise of judicial

---

4. *See, e.g.*, Alaska Stat. § 25–23–090 (2008); Ark. Code Ann. § 9–9–211 (2008); Fla. Stat. Ann. § 63.097 (2008); Iowa.Code Ann. § 600.9 (2008); Indiana Code Ann. § 35–46–1–9 (2008); N.M. Stat. Ann § 32A–5–34(B) (2008); Utah. Code Ann. § 76–7–203(1)(a) (2008).

5. In Latin, *"Expressio unius est exclusio alterius."* See *Pitco Prod. Co. v. Chaparral Ener., Inc.*, 2003 OK 5, ¶ 20 fn. 32, 63 P.3d 541; *Patterson v. Beall*, 2000 OK 92, ¶ 16 fn. 27, 19 P.3d 839.

6. Minn Stat. Ann., § 259.55 (2007), Mont.Code Ann. § 42–7–101(1)(k) (2007); N.H.Rev.Stat. Ann. § 170–B:13 (2008); N.D. Cent.Code § 14–15–10 (2007); Wis. Stat. § 48.913 (2008).

7. Minn Stat. Ann., § 259.55 (2007); Mont.Code Ann. § 42–7–101(1)(k) (2007); N.H.Rev.Stat. Ann. § 170–B:13 (2008); N.D. Cent.Code § 14–15–10 (2007).

8. Mont.Code Ann. § 42–7–101(1)(k) (2007).

9. Mont.Code Ann. § 42–7–101(1)(k) (2007); N.D. Cent.Code § 14–15–10 (2007).

10. Mont.Code Ann. § 42–7–101(1)(k) (2007).

11. Minn Stat. Ann., § 259.55 (2007); N.H.Rev. Stat. Ann. § 170–B:13 (2008) ($50 cap on gifts); N.D. Cent.Code § 14–15–10 (2007); Wis. Stat. § 48.913 (2008) ($100 cap on gifts and $300 cap on maternity clothes).

12. Conn. Gen.Stat. § 45a–728c (2008) ($1500 cap per child); Idaho Code Ann. § 18–1511 (2008) ($2000 cap per child); Wis. Stat. § 48.913 (2008) ($5000 cap on living expenses).

13. Title 10 O.S.2001 § 7505–1.2(A) provides in pertinent part:

> 1. In a proceeding pursuant to the Oklahoma Adoption Code, the court shall appoint an attorney for a minor in a contested proceeding pursuant to the Oklahoma Adoption Code and may appoint an attorney for a child in an uncontested proceeding.
> 2. The attorney shall be charged with the representation of the child. To that end, the attorney shall make such further investigation as the attorney deems necessary to ascertain the facts, to interview witnesses, examine and cross-examine witnesses at the preliminary hearing and trial, make recommendations to the court, and participate further in the proceedings to the degree appropriate for adequately representing the child. . . .

14. Okla. Const. art, 7, § 4 provides:

> The appellate jurisdiction of the Supreme Court shall be co-extensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final. The original ju-

authority manifests itself in three entirely different genres of decision-making process: adjudication, management or administration, and rule-making.[15] Under this Court's administrative supervision, it would be appropriate to draft a rule to provide the district courts with guidance on the application of § 7505–3.2. I would establish a committee of the Oklahoma Bar Association to study the issue and recommend a Rule for District Courts to clarify which types of adoption-related expenses are and are not allowable.

risdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts and all Agencies, Commissions and Boards created by law. The Supreme Court, Court of Criminal Appeals, in criminal matters and all other appellate courts shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law and may exercise such other and further jurisdiction as may be conferred by statute. Each of the Justices or Judges shall have power to issue writs of habeas corpus to any part of the State upon petition by or on behalf of any person held in actual custody and make such writs returnable before himself, or before the Supreme Court, other Appellate Courts, or before any District Court, or judge thereof in the State. The appellate and the original jurisdiction of the Supreme Court and all other appellate courts shall be invoked in the manner provided by law.

Okla. Const. art. 7, § 6 provides in pertinent part:

Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, general administrative authority over all courts in this State, including the temporary assignment of any judge to a court other than that for which he was selected, is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules....

Title 20 O.S.2001 § 24 provides:

Nothing herein shall impliedly limit the rule-making authority which the Supreme Court inherently has or has by virtue of other statutory provisions.

15. *Board of Law Library Trustees v. State ex rel. Petuskey*, 1991 OK 122, ¶ 10, 825 P.2d 1285.