IN RE THE ADOPTION OF: P.R.M.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE ADOPTION OF: P.R.M.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE ADOPTION OF: P.R.M.
2020 OK CIV APP 47
Case Number: 118478
Decided: 08/18/2020
Mandate Issued: 09/16/2020
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2020 OK CIV APP 47, __ P.3d __

 

IN RE THE ADOPTION OF: P.R.M.,

OKLAHOMA COUNTY PUBLIC DEFENDER o/b/o THE MINOR CHILD, Appellant/Cross-Appellee,
v.
ADAM and SAMANTHA JONES, Appellees/Cross-Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALLEN WELCH, TRIAL JUDGE

AFFIRMED

Robert A. Ravitz, OKLAHOMA COUNTY PUBLIC DEFENDER, Abigail M. Patten, ASSISTANT PUBLIC DEFENDER, OKLAHOMA COUNTY, Oklahoma City, Oklahoma, for Appellant

Alexandria Lewis Temple, M. Jordan Berglund, BELOVED ADOPTION LAW, PLLC, Tulsa, Oklahoma, for Appellees

P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Appellant/Cross-Appellee, the Oklahoma County Public Defender (OCPD), appeals from the trial court's order granting a motion by Appellees/Cross-Appellants, Adam and Samantha Jones (Adoptive Parents), to approve adoption-related expenses. Adoptive Parents have filed a cross-appeal from the trial court's late entry of an order appointing OCPD to represent P.R.M. (Child) for the purpose of reviewing the expenses included in Adoptive Parents' motion. Adoptive Parents also have filed a motion to dismiss this appeal, the decision of which has been deferred to this time. For the reasons set forth below, we deny Adoptive Parents' motion to dismiss the appeal and affirm the trial court's order appointing OCPD as Child's attorney, from which Adoptive Parents have appealed. We summarily affirm, pursuant to Supreme Court Rule 1.202(d) and (e), the order from which OCPD appeals.

BACKGROUND

¶2 Neither party challenges the entry of a final decree of adoption to Adoptive Parents in this matter, nor is there an allegation that the state's child trafficking laws have been violated. Rather, the disputes concern whether the trial court acted unreasonably in approving adoption-related expenses and in making an appointment of OCPD to serve as Child's counsel after the court had already approved the expenses.

¶3 Child was born in March 2019 in Arizona. Both the Arizona and Oklahoma Offices for the Administration of the Interstate Compact for the Placement of Children (ICPA) approved Child's placement with Adoptive Parents, and on May 10, 2019, Adoptive Parents filed a Petition for Pre-Adoption Termination of Parental Rights in Oklahoma County District Court. The court entered an order terminating the biological mother's parental rights on June 24, 2019, and an order terminating the biological father's rights on July 12, 2019.

¶4 Also on July 12, 2019, Adoptive Parents filed their Petition for Adoption of Child. They then submitted an "Affidavit of Adoption-Related Costs and Expenditures" to OCPD for review pursuant to Oklahoma County Administrative Order A07-2014-21 (Local Order A07-2014-21)[1] and 10 O.S. Supp. 2017 § 7505-3.2,[2] the provisions of which are at the heart of this case.

¶5 Parent's Affidavit listed $42,658 in total expenses, and included $30,750 in charges attributable to ABC Infant Adoption, LLC, an agency affiliated with International Child Foundation, Inc. (Agency). Agency's invoice was attached, showing $1,500 for "agency registration," $15,500 for "adoption fee at matching," and $13,750 for "birthmother counseling, planning, placement & consents," but no further detail.

¶6 On August 9, 2019, OCPD filed a letter with the court stating:

Pursuant to administrative order, I have reviewed the expense records in FA-2019-0247. The Public Defender objects to ABC Infant Adoption, LLC's fees as grossly excessive as it is approximately $15,000 more than is typically approved, but does not object to the attorney fees.

¶7 On September 16, 2019, Adoptive Parents filed a motion for an order approving their adoption-related expenses. An Agency representative and attorney, Kelly Sifferman, also submitted an affidavit breaking down the $30,750 charge as comprised of Agency services costing a total of $20,250 and birth mother living expenses of $10,500. Sifferman's Affidavit explained the various aspects of Agency's services, and noted that Agency had submitted an accounting of its expenses to Oklahoma's ICPC office, which approved the placement on April 2, 2019.

¶8 The court conducted an evidentiary hearing on October 8, 2019. Adoptive Mother, Samantha Jones, testified as to the considerable research she and Adoptive Father had conducted prior to selecting Agency to handle their private adoption, including comparisons of amounts charged by agencies. She agreed that two services they had looked at within Oklahoma had fees of approximately $16,000 and $18,000, but those amounts did not include the expenses of the birth mother (which is included in Agency's fee). She also said, however, that the average fee being charged by the various adoption agencies they researched was about $39,000, including birth mother expenses. Jones testified to the numerous services provided by Agency to the couple prior to, at the time of, and after the birth of Child, including coordinating meetings and other communications with the birth mother and being present throughout the birth mother's labor and delivery of Child. She estimated Adoptive Parents spent at least 50 hours interacting with Agency personnel overall, and she said the Agency was available to them consistently. She stated that Agency disclosed full information concerning their fees prior to contacting the birth mother on their behalf.

¶9 Agency attorney Sifferman testified to her experience as an adoption law practitioner, stating that she had completed 72 adoptions in the last year and more than 2,000 over the course of her 35-year career practicing law. She identified her previously submitted Affidavit, and described at length the services provided by Agency, which she considered as a responsible and reasonably priced coordinator of adoption services in Arizona.

¶10 A particular discrepancy that was brought out during her testimony concerned the $10,500 charged by Agency for a "birth mother living expense fund," although the actual amount received by the birth mother for expenses was $6,544.30. Sifferman explained that Arizona adoption regulations permit agencies to charge a pooled or average fee of a set amount for birth mother expenses in order to help offset agency expenditures for birth mothers who decide not to go through with the adoption. She said the same amount is charged to all adoptive parents who use the agency, and the arrangement was fully disclosed to Adoptive Parents in Agency's itemized "estimated expense" billing document that was admitted as an exhibit. Sifferman also said the Agency maintained detailed receipts for birth mother expenses, although those receipts were not provided as part of Adoptive Parents' request for approval, as such were not required to be produced under Arizona law to Arizona birth mothers.

¶11 In addition to its list of itemized expenses, exhibits offered by Adoptive Parents and admitted at the hearing included the following: (1) a "Social and Medical Summary/Counseling Report" describing the birth mother and listing the various services provided to her by Agency; (2) copies of a motion and order of an Arizona court approving the birth mother's requested expenses;[3] and (3) a copy of Sifferman's letter to the Arizona ICPC office together with a list of all documents provided to that agency.

¶12 Though OCPD appeared and cross-examined the witnesses, it presented no evidence and called no witnesses. OCPD thereafter submitted proposed findings of fact and conclusions of law, as did Adoptive Parents. OCPD argued in its proposed findings that "[t]ypically, Courts in Oklahoma County have approved costs to be reasonable at approximately $15,000.00 less than what was requested here," and that "[r]ecently . . . this Court has awarded similar Agencies fees and deemed those fees to be reasonable at approximately $15,000 less" than the fee requested by Agency in this matter, apparently referring to the $30,750 appearing on Agency's initial invoice. OCPD again complained of the lack of detailed receipts concerning the birth mother's expenses, and specifically requested that the court deny approval and order reimbursement to Adoptive Parents of the $3,955 difference between the amount actually paid to the birth mother and the $10,500 paid to Agency.

¶13 On November 8, 2019, the court entered a detailed, 18-page order approving the adoption-related costs and expenses. The order describes at length the testimony of the two witnesses and the evidence presented, including the "agency fee" of $20,250, and "birth mother expense charge" of $10,500. The order accurately describes the legal positions taken by Adoptive Parents and by OCPD with regard to the three matters of particular concern to OCPD: (a) the "pooled cost basis" allowed by Arizona law; (b) "Agency's failure to provide this Court with receipts"; and (c) "whether this Court must extend full faith and credit to Orders entered by the Arizona Court." The order contains a lengthy analysis of the evidence and law, and, stating the court was "mindful of its duty 'to independently determine the reasonableness of adoption-related expenses,'"[4] found that Adoptive Parents had sustained their burden of demonstrating the reasonableness of adoption-related expenses, and granted their motion.

¶14 Also on November 8, OCPD relates that it was in the process of preparing to file the instant appeal, when "it was realized there was never a written Order entered Appointing [OCPD] to review costs and expenses . . . as is required to appeal a case, according to Oklahoma State Supreme Court Rule 1.23."[5] OCPD made a verbal request to the court to be appointed counsel, which the court set for in camera argument on November 12, 2019. Adoptive Parents objected to the appointment, asserting OCPD was acting as a "special master" for the court pursuant only to Local Order A07-2014-21, and was not acting as Child's counsel. The court took the matter under advisement.

¶15 On the following day, November 13, 2019, the court held a previously-scheduled finalization hearing and entered a Final Decree of Adoption. OCPD did not appear at the final hearing.

¶16 On November 18, the trial court ordered OCPD to file a written motion seeking appointment as Child's counsel, and on November 25, OCPD filed a "renewed motion to memorialize by written order" the appointment of OCPD. On December 2, the court entered an order appointing OCPD as Child's attorney for the purpose of reviewing adoption-related fees, costs, and expenses, pursuant to 10 O.S. § 7505-1.2(A)(1). In a lengthy explanation of the parties' competing arguments, the court granted OCPD's motion, finding that an order appointing OCPD would serve "to make de [jure][6] that which has been de facto, and . . . to recognize and formalize the work that [OCPD] has already been performing . . . ."

¶17 OCPD filed this appeal from the order approving adoption-related costs and expenses, asserting trial court error in approving Agency's charge for its services. Adoptive Parents filed a cross-appeal challenging the court's order appointing OCPD. Adoptive Parents also moved to dismiss OCPD's appeal, challenging OCPD's standing to seek review of the order approving the expenses associated with the adoption.

STANDARD OF REVIEW

¶18 The reasonableness of expenses in an adoption case is reviewed for abuse of discretion. "The appellate court will reverse for abuse of discretion where the lower court ruling is without a rational basis in the evidence or where it is based upon an erroneous legal conclusion." In re Adoption of Baby Boy A., 2010 OK 39, ¶ 19, 236 P.3d 116. Issues that involve statutory construction or that question a party's standing present issues of law, and are subject to de novo review. See id. ¶ 20 (statutory construction); In re Adoption of Baby W., 2009 OK CIV APP 21, ¶ 7, 220 P.3d 32 (standing). "De novo review is plenary, independent, and non-deferential to the lower courts." Baby Boy A., 2010 OK 39 at ¶ 20.

ANALYSIS

I. Adoptive Parents' Motion to Dismiss and Cross-Appeal

Adoptive Parents' Motion to Dismiss Denied; Trial Court's Order Appointing
Child's Counsel Affirmed

¶19 The question of OCPD's standing to bring this appeal is central both to Adoptive Parents' motion to dismiss and to their appeal of the trial court's order appointing OCPD as an attorney for Child to review adoption-related costs and expenses. Adoptive Parents rely heavily on In re Adoption of Baby G., 2008 OK 92, 195 P.3d 377, where the Supreme Court held that a public defender who was not appointed to represent the adopted children, but instead was appointed as a "special master" to assist the court in reviewing adoption expenses, lacked standing to appeal from orders approving the expenses. In dismissing the appeal, the Court explained, "The Public Defender is simply not 'aggrieved' by the refusal of the appointing trial courts to follow the Public Defender's recommendations in regard to the flat fee contracts and administrative expenses." Id. ¶ 6.

¶20 Adoptive Parents rely on Baby G. in support of their motion to dismiss this appeal and of their merits appeal from the order concerning OCPD's appointment. They contend that (1) OCPD was appointed only as a special master and thus lacks standing to appeal; (2) OCPD did not adequately perform as Child's attorney; (3) OCPD's request for appointment was moot because it was not made until after the court had already approved the expenses; and (4) the trial court abused its discretion by appointing OCPD.

¶21 In support of its claim that it has standing to appeal, OCPD argues that the year after In re Baby G. was decided, the Legislature amended § 7505-1.2(A)(1) to its current version, which allows for the appointment of an attorney for a child solely for the purpose of "examin[ing] all expenses and attorney fees presented to the court for approval." Compare 10 O.S.2001 § 7505-1.2(A)(1)(in effect at the time of the Baby G. decision) with 10 O.S. Supp. 2009 § 7505-1.2(A)(1). OCPD further argues that in the 2010 decision of In re Adoption of Baby Boy A., 2009 OK 39, 236 P.3d 116, the Court permitted, without challenge, a public defender's appeal "in his capacity as the attorney for the minor child" to seek review of a district court's approval of the adoptive parents' application for approval of costs and expenses.

¶22 Adoptive Parents argue that Baby Boy A. is inapplicable here because the attorney who was appointed in that case represented the child throughout the proceeding, which began as a contested adoption. They contend that OCPD here fulfilled only the role of a "special master," and did not perform the traditional role of an attorney for Child, having not met Child or been actively advocating for Child throughout the case.

¶23 Assuming arguendo the validity of these criticisms, however, Adoptive Parents ignore the clear language in § 7505-1.2(A) providing for the appointment of an attorney "for the child" for the sole purpose of "examin[ing] all expenses and attorney fees presented to the court for approval." Thus, the statute contemplates that counsel may be appointed for a more limited role in an uncontested case.

¶24 Further, in Baby G., the Court recognized that the public defender's participation in the case inured to the benefit of the children; however, the fact that the public defender was not appointed to "represent the children" but instead was to merely assist the court, deprived him of standing. 2008 OK 92 at ¶ 3. The amendment to § 7505-1.2(A) since the date of Baby G. indicates an intent by the Legislature to clarify the role to be played by an attorney appointed in such a case--i.e., to assure compliance with § 7505-3.2, the primary purpose of which is to prevent trafficking in children. As explained by the Court in Baby Boy A.:

The district court's duties under § 7505--3.2 are unmistakable. Section 7505--3.2 clearly mandates a thorough and rigorous inquiry into the adoption-related expenditures by the district court as part of the adoption proceedings. The obvious goal to be achieved by this mandated district court inquiry of expenditures in connection with an adoption is to thwart the subtle as well as the apparent buying and selling of children. 

2010 OK 39 at ¶ 23 (emphasis added)(footnotes omitted). Here, the trial court and OCPD's failure to assure that the appointment of OCPD was not memorialized until after OCPD had entered the case and performed its function in accord with the law should not be used to effectively deprive Child of the protections intended by § 7505-3.2.

¶25 Though Adoptive Parents question whether the trial court properly exercised its discretion by entering an order after the fact acknowledging OCPD's role as attorney for Child, it is important to note that they do not challenge the validity of OCPD's actions during the course of the proceeding. Nor did Adoptive Parents themselves ever question or object to the lack of a specific order being entered in the case file appointing OCPD prior to the time that OCPD raised the issue on its own.

¶26 Neither party provides citation to authority specifically on point with the circumstances presented by this case. However, the Oklahoma Supreme Court "has in a number of cases determined that public officials were de facto officers where they lacked some qualification necessary to constitute them de jure officers and has held their acts valid where they involved the public and third persons." Ajax Contractors, Inc. v. Myatt, 1967 OK 19, ¶ 15, 424 P.2d 30. Among the cases cited in Ajax Contractors was Sheldon v. Green, 1938 OK 165, 77 P.2d 114, in which the Court held valid the actions of a "de facto" judge who had been appointed to the office although he lacked the legal qualifications for the position. The Court in Ajax Contractors further noted "that the official acts of such persons are regarded as valid on the grounds of public policy, and for the protection of those having official business to transact." 1967 OK 19 at ¶ 18.

¶27 Though not totally analogous, a similar situation is presented by the trial court's "after-the-fact" appointment acknowledging OCPD's status as Child's attorney for the purpose of reviewing adoption-related expenses, when OCPD already had been acting in that capacity. We therefore reject Adoptive Parents' arguments for reversal of the appointment order and for dismissal of this appeal. We deny the motion to dismiss, and affirm the order that is the subject of Adoptive Parents' cross-appeal.

II. OCPD's Appeal

Trial Court's Approval of the Cost of Agency's Services is Summarily Affirmed
Under Supreme Court Rule 1.202(d) and (e)

¶28 In its appellate briefs OCPD argues three propositions of error that raise the same issues argued in the trial court: trial court error in finding the adoption-related expenses were reasonable; error in approving living expenses for the birth mother without requiring itemized receipts; and error in approving an Agency fee that it continues to assert was grossly in excess of fees charged in Oklahoma.

¶29 In Baby Boy A., the Court explained the trial court's duties in reviewing and approving an application concerning adoption-related expenses:

[T]he district court, in its review of the prospective adoptive parents' affidavit of expenditures, must thoroughly examine each and every expenditure disclosed by the affidavit and the evidence offered in support of the expenditure, and determine the legality and reasonableness of each expenditure. Before approving the prospective adoptive parents' expenditures, the district court must be satisfied that all expenditures have been disclosed and that the expenditures are authorized by § 7505--3.2. If an expenditure is not specifically listed in § 7505--3.2(B) or has not been previously authorized based upon a finding of unusual circumstance by the court, the district court must, in writing, disapprove the expenditure and order reimbursement. If an expenditure is not reasonable, it is not in compliance with § 7505--3.2(B), and the district court must, in writing, disapprove the expenditure and order reimbursement.
. . . .
Under the statute, the district court is the gatekeeper protecting the vulnerable prospective adoptive parents from excessive charges for the adoption and preventing prospective adoptive parents from making excessive payments for the adoption.

2010 OK 39 at ¶¶ 24 and 50.

¶30 On review of the record and the briefs of the parties, we find the trial court fulfilled its duties as set forth above. We further find that no reversible error of law appears, that the findings of fact and conclusions of law of the trial court adequately explain the decision, and that the trial court did not abuse its discretion. Accordingly, the order approving expenses is summarily affirmed pursuant to Supreme Court Rule 1.202(d) and (e).

CONCLUSION

¶31 OCPD has standing to bring this appeal and to challenge the trial court's determination concerning the reasonableness of expenses by Adoptive Parents. The trial court's "after-the-fact" appointment acknowledging OCPD as Child's counsel for the purpose of reviewing Adoptive Parents' adoption-related expenses is free of reversible error and is affirmed for the reasons set forth above. The court's order granting Adoptive Parents' motion for approval of adoption-related expenses also is free of reversible error and is summarily affirmed under Supreme Court Rule 1.202(d) and (e).

¶32 AFFIRMED.

WISEMAN, C.J., and HIXON, J., concur.

FOOTNOTES

[1] Local Order A07-2014-21, which the parties agree is applicable, requires that judges "shall adhere" to the following rules/procedures in adoption matters:

1. Strict compliance with allowable costs and expenses detailed in 10 O.S. § 7505--3.2B is mandatory.
. . . .
3. The Public Defender shall be appointed in all cases where adoption-related costs and expenses are requested and shall assist the Court in the review of the application for such costs and expenses. The Public Defender shall be an advocate for strict compliance with the law. (10 O.S. § 7505-1.2).

4. The adoption courts shall require full documentation of all claimed costs and expenses be provided . . . . Any costs or expenses not fully documented shall not be allowed.

[2] Pursuant to subsections (A)(2) and (B) of § 7505-3.2 (in pertinent part):

[A. 2.] No final decree of adoption shall be entered until the court is satisfied that all costs and expenses have been disclosed, are reasonable, and that the costs and expenses do not violate the provisions of subsection B of this section. Upon its review of the affidavit of monies expended, the court shall in writing disapprove any expenditure that the court deems unreasonable or in violation of [21 O.S. 2011 & Supp. 2015 §§ 865 through 870, prohibiting trafficking in children] . . . .

B. 1. Except as otherwise specifically provided by law, the following list of adoption-related costs and expenses specified in this paragraph may be deemed proper items for a person to pay in connection with an adoption:

a. reasonable attorney fees and court costs,
b. reasonable medical expenses for birth mother and minor to be adopted,
c. reasonable adoption counseling expenses for birth parents before and after the birth of the minor, not to exceed six (6) months from placement of the minor,
d. reasonable fees of a licensed child-placing agency, including social services staff fees provided by agency employees that include:

(1) casework services,
(2) adoptive child and family studies,
(3) placement services,
(4) certification of agency facilities,
(5) admission assessments, and
(6) service planning,

e. (1) reasonable and necessary living expenses of the birth mother that are incurred during the adoption planning process or during the pregnancy, not to exceed two (2) months after the birth of the minor or after the consent or relinquishment of the birth mother. Reasonable and necessary living expenses include but are not limited to:

(a) housing expenses,
(b) utilities, such as electric, gas, water, or telephone bills,
(c) food for the birth mother and any minor child of the birth mother residing in the home of the birth mother,
(d) travel expenses for transportation to support the pregnancy, such as gasoline, bus fares, or providing for the temporary use of a vehicle during the pregnancy, and
(e) child care or foster care for any minor child of the birth mother associated with pregnancy-related medical care.
(2) Reasonable and necessary living expenses shall not include:
(a) any expenses met by existing resources of the birth mother,
(b) any expenses used for the support of family members who are not minor children of the mother,
(c) any expenses for recreational or leisure activities, and
(d) the purchase or gift of an automobile,
f. reasonable expenses for a home study,
g. reasonable and necessary costs associated with an international adoption,
h. reasonable expenses legally required by any governmental entity related to the adoption of a minor, and
i. a one-time gift to the birth mother from the prospective adoptive parents of no greater value than One Hundred Dollars ($100.00).

2. In addition, all expenses approved by the court should be commensurate with other customary fees for similar services by persons of equivalent experience and training where the services are performed. Any services provided outside this state shall be allowed in an amount as if the services had been performed within the State of Oklahoma. . . .

5. Except as otherwise ordered by the court except for good cause shown, all payments made pursuant to this section shall be paid directly to the third-party provider of services or goods. Any living expense paid on behalf of a birth mother in a domestic adoption which is not supported by an itemized receipt shall not be allowed for payment. If gift cards are issued to pay expenses, an itemized receipt verifying purchases shall be required for approval by the court. The accounting shall include vouchers for all monies expended, copies of all checks written and receipts for all cash payments attesting to the accuracy of the accounting.

[3] The actual birth mother expenses were less than the requested and court-approved expenses, which totaled $8,490.

[4] The court here cited In re Adoption of Baby Boy A., 2010 OK 39, ¶ 16, 236 P.3d 116 (emphasis in original).

[5] Supreme Court Rule 1.23, 12 O.S. Supp. 2013 ch. 15, app., contains the following language, to which OCPD apparently is making reference:

In a juvenile appeal when the appellant is a minor represented by court-appointed counsel, that counsel may file, in lieu of remitting the cost deposit provided by 20 O.S. § 15, an in forma pauperis affidavit stating that the minor is indigent to the best information and belief of counsel, and a certified copy of the order appointing counsel as the lawyer for the minor. The affidavit and copy of the order of appointment shall be filed with the minor's petition in error.

We note that the trial court's order entered on December 2, 2019, is attached to the pauper's affidavit on file in OCPD's appeal.

[6] This a corrected spelling of the term used by the court.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2009 OK CIV APP 21, 220 P.3d 32, IN THE MATTER OF THE ADOPTION OF BABY W.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1938 OK 165, 77 P.2d 114, 182 Okla. 208, SHELDON v. GREEN
Discussed
 1967 OK 19, 424 P.2d 30, AJAX CONTRACTORS, INC. v. MYATT
Discussed at Length
 2008 OK 92, 195 P.3d 377, IN THE MATTER OF THE ADOPTION OF BABY G.
Discussed at Length
 2009 OK 39, 213 P.3d 570, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SPRADLING
Cited
 2010 OK 39, 236 P.3d 116, IN THE MATTER OF THE ADOPTION OF BABY BOY A
Discussed at Length
Title 20. Courts
 Cite
Name
Level

 20 O.S. 15, Deposit to Cover Costs - Indigents
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 865, Definitions
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA